498 P.2d 1264

The STATE of Idaho, Plaintiff-Respondent,

v.

Fredrick M. YOELIN, Defendant-Appellant.

No. 10651.

Supreme Court of Idaho.

June 22, 1972.

Webb, Tway & Redford, Boise, for defendant-appellant.

W. Anthony Park, Atty. Gen., and John M. Hancock and Charles P. Brumbach, Asst. Attys. Gen., Boise, for plaintiff-respondent.

McQUADE, Chief Justice.

Early in the morning of November 30, 1969, Jacquelyn L. Yoelin was shot and killed by her husband, Fredrick M. Yoelin at their residence in Boise. The husband was first charged with involuntary manslaughter; shortly thereafter, the charge was modified to allege first degree murder. After further investigation, however, the charge was reduced to involuntary manslaughter. On January 9, 1970, an information was filed by the Ada County Prosecuting Attorney after waiver of a preliminary examination by the defendant. On January 13th the defendant, represented by counsel, was arraigned and pled guilty to the charge of involuntary manslaughter. After examining the defendant, the court accepted the plea of guilty and ordered a pre-sentence investigation to be made and continued the case until February 3, 1970.

On February 3rd, counsel stipulated that sentencing could be continued until February 17. However, counsel also stipulated that testimony could be taken forthwith from two witnesses who resided outside the state, but who were in court that day. These witnesses were the defendant's father from Colorado and brother from California. Both witnesses testified that if probation were subsequently granted to the defendant, then either of them would definitely provide a home and a job for the defendant and his young son. Both also testified that the defendant loved his wife and child. At that time the defendant also introduced three letters, two of them regarding a place to stay and work should the defendant be placed on probation, and the third from a character witness.

On February 17th, the pre-sentence report had been made and the court asked counsel if either wanted to make any statement before sentencing. From the record, it appears that counsel for the defendant at this time proceeded to examine the report on a page by page basis making corrections and comments. These comments ranged from attempts at mitigation both as to the character of the defendant and the circumstances surrounding the crime, to reasons why the defendant should be granted probation.

After the defense counsel's review of the report was finished, the prosecutor made a relatively brief reply. The prosecutor's conclusion from the report was that the defendant's life had been irresponsible up to that time and that this irresponsibility had led to the handling of the firearm on the night defendant's wife was killed. However, the prosecutor made no specific recommendation to the court regarding sentencing.

The trial court entered judgment that the defendant was guilty of involuntary manslaughter. In considering the disposition of the defendant, the court stated that he had made an "extensive review of everything in the file and has asked for interviews of witnesses that were not interviewed by law enforcement and has looked

at everything suggested by defendant's counsel * * *." The court went on to state that he agreed with counsel on both sides that this was a case of involuntary manslaughter and that he did not come to a decision until he listened to all of the arguments on both sides. After considering the disposition from the State's point of view, as well as from the defendant's, the court then considered if there was any way to "relax" the punishment. The court concluded that there was not "much reason" for so doing since, in the court's opinion, the defendant was immature and irresponsible. The defendant was sentenced to the State Penitentiary for a term not to exceed five years. (The maximum possible sentence was ten years, under I.C. § 18–4007). The court then asked counsel for the defendant if he had anything further. Counsel asked if the court had taken into consideration all the witnesses that the probation officer had talked to. The court replied that he had and that he thought the sentence would help the defendant rather than ruin him, as was suggested by defendant's counsel.

■ The defendant has appealed to this Court from that judgment and order of commitment to the State Penitentiary. The defendant was released on bail pending the outcome of this appeal. The defendant has failed to make any assignments of error in his brief; nevertheless, it appears that his basic argument is that the trial court abused its discretion in not granting probation. A similar question arose in the recent case of State v. Kauffman.[1] While discussing previous Idaho cases involving this question, five elements which a trial court must consider in an application for probation were listed. These elements are:

"(1) all the facts and circumstances surrounding the offense of which defendant is convicted; (2) whether the defendant is a first offender; (3) the previous ac-

tions and character of the defendant; (4) whether the defendant might reasonably be expected to be rehabilitated; and (5) whether it reasonably appears that the defendant will abide by the terms of the probation."[2]

From the record of the proceedings as set out, *supra*, we cannot agree with the defendant that the trial court did not consider all of these elements. All of these elements were before the trial court in one form or another and at various stages of the proceedings. At the time of judgment the trial court stated that he had made an extensive review of everything and looked at everything suggested by defendant's counsel.

This case, like *Kauffman*, is one in which the defendant offered evidence to the effect that he would be a good prospect for probation, but in which there was also evidence to the contrary. As in *Kauffman*,

"[The] court had to evaluate the many intangibles that can be gleaned only from the appearance before that court. It is the burden of the trial court to render its decision in this type of case based on all the information available, the defendant's demeanor and his actions and response in the court room."[3]

We conclude that the trial court did not abuse its discretion in denying probation and sentencing the defendant to the State Penitentiary.

■ Defendant next argues that the trial court "abused its discretion by functioning more as a police agency rather than as a court" in the material it considered with respect to sentencing. This argument apparently is directed at the court's decision to order additional investigation of the case by a probation officer, the results of which were made available to counsel before sentencing. This Court has recently said that a trial court has much

1. 94 Idaho 20, 480 P.2d 614 (1971).

2. 480 P.2d, at 616.

3. 480 P.2d, at 617.

more latitude regarding information it may consider for purposes of sentencing after guilt is established.[4] This latitude is limited by three safeguards:

> " '(1) that the defendant be afforded a full opportunity to present favorable evidence; (2) that the defendant be afforded a reasonable opportunity to examine all the materials contained in the pre-sentence report; (3) that the defendant be afforded a full opportunity to explain and rebut adverse evidence.' " [5]

None of these safeguards was violated in the present case and we therefore find that the trial court did not abuse its discretion in ordering and considering the results of the additional investigation.

Finally, the defendant argues that the "failure of the trial court to advise the appellant of his right to a hearing in mitigation requires a vacation of the sentence in this case and a remand to district court to provide appellant with such opportunity." I.C. § 19–2515 authorizing inquiry into mitigating or aggravating circumstances, provides that:

> "After a plea or verdict of guilty, where a discretion is conferred upon the court as to the extent of the punishment, the court, upon the oral suggestion of either party that there are circumstances which may be properly taken into view either in aggravation or mitigation of the punishment, may, in its discretion, hear the same summarily, at a specified time, and upon such notice to the adverse party as it may direct."

Therefore, matters in mitigation may be heard before sentencing either upon motion of the court or upon the oral suggestion of either party.[6] The record reveals that mitigating testimony and evidence was offered and considered on behalf of the defendant at both the February 3 and February 17 proceedings. The February 17, 1970 proceeding was, among other things, a hearing to ascertain all evidences in mitigation and to assist the trial judge in determining any sentence to be imposed.

McFADDEN, DONALDSON, SHEPARD and BAKES, JJ., concur.

---

4. State v. Ballard, 93 Idaho 355, 359–360, 461 P.2d 250 (1969).

5. 93 Idaho 355, at 360, 461 P.2d at 255.

6. *See:* State v. Weise, 75 Idaho 404, 411, 273 P.2d 97 (1954).